UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

JOEL A. HAYDEN,           )
                          )
        Petitioner,       )
                          )
    v.                    )   1:18-cv-00432-JAW
                          )
                          )
WARDEN, MAINE STATE PRISON,[1] )
                          )
        Respondent        )

**RECOMMENDED DECISION ON 28 U.S.C. § 2254 PETITION**

In this action, Petitioner Joel Hayden seeks relief pursuant to 28 U.S.C. § 2254. (Petition, ECF No. 1.) Pursuant to 28 U.S.C. § 2254(d), Petitioner contests the state court's denial of his post-conviction claims.

After a review of the section 2254 petition, the State's response, and the record, I recommend the Court deny Petitioner's request for relief.

**I.     FACTUAL BACKGROUND AND PROCEDURAL HISTORY**

In January 2013, following a seven-day jury trial, Petitioner was convicted in state court of two counts of knowing and intentional murder, 17-A M.R.S. § 201(1)(A). (*State v. Bellavance*, No. CR-2011-4876, Docket Record at 6-7, Judgment and Commitment at 1.)[2]  In February 2013, the state court sentenced Petitioner to two concurrent terms of life in prison. (Judgment and Commitment at 1.)

---

[1] The Court granted Petitioner's motion to substitute the Warden of the Maine State Prison for the initially-named defendant, Randall Liberty, Warden, Maine State Prison. (Order, ECF No. 18.)

[2] The state court record (ECF No. 9) is filed in paper form.

Petitioner appealed from the conviction and judgment, and the state court granted Petitioner leave to appeal from the sentence. *State v. Hayden*, 2014 ME 31; 86 A.3d 1221, 1225. On appeal, Petitioner argued "that the evidence presented at trial was insufficient to support the jury verdict, that the court misapplied sentencing principles, and that the court abused its discretion when it determined that aggravating and mitigating factors did not require a departure from the basic sentence." *Id.* ¶ 1.[3] The Law Court affirmed the conviction and the sentence. *Id.*

In November 2014, alleging ineffective assistance of counsel at trial and on appeal, Petitioner filed a petition in state court for post-conviction review.[4] (*Hayden v. State*, No. CUMCD-CR-2014-08229, Docket Record at 1, State Court Petition.) The post-conviction court held an evidentiary hearing in August 2016; following the hearing, the parties filed written memoranda, and in January 2017, the court denied the

---

[3] The Law Court reviewed the facts in its evaluation of Petitioner's the sufficiency-of-the-evidence argument. *State v. Hayden*, 2014 ME 31, ¶¶ 2-13, 86 A.3d 1221.

[4] After Petitioner's arraignment, the state court granted Petitioner's motion for withdrawal of counsel; the court then appointed two attorneys who represented Petitioner through the trial and appeal. (*State v. Bellavance*, No. CR-2011-4876, Docket Record at 1-3.) *Hayden*, 2014 ME 31, 86 A.3d at 1223.

After Petitioner filed a petition for post-conviction review, the court appointed post-conviction counsel, granted Petitioner's motion for withdrawal of counsel, and appointed the attorney who represented Petitioner through the post-conviction proceeding. *Hayden v. State*, No. CUMCD-CR-2014-08229, Docket Record at 1-2, State Court Petition.) The post-conviction court noted in its decision that Petitioner's pro se petition and an accompanying hand-written addendum were not amended. (*Hayden*, No. CUMCD-CR-2014-08229, Decision (Jan. 19, 2017) at 1.)

After Petitioner filed a request for discretionary review by the Law Court, the Law Court suspended its rules for a period sufficient for the post-conviction court to rule on some motions Petitioner had filed after the post-conviction decision; the Law Court permitted post-conviction counsel to withdraw, and it appointed counsel to represent Petitioner on the discretionary review. (*Hayden v. State*, No. Cum.-17-70, Docket Record at 3.) The Law Court's docket record reflects that the trial court denied post-conviction review on August 11, 2017. (*Id.* at 4.)

2

petition. (*Hayden*, No. CUMCD-CR-2014-08229, Docket Record at 4-5; Post-conviction Tr. at 1; Postconviction Decision (Jan. 19, 2017) at 17.)

In April 2018, the Law Court denied Petitioner's request for discretionary review, concluding: "After review of the record and [Petitioner's] memoranda, the Court has determined that no further hearing or other action is necessary to a fair disposition. It is therefore ORDERED that the request for a certificate of probable cause to proceed with the appeal is hereby DENIED." (*Hayden v. State*, No. Cum-17-70, Order Denying Certificate of Probable Cause (Me. Apr. 9, 2018).)

Petitioner requests relief from the Law Court's denial of a certificate of probable cause.[5]

## II. DISCUSSION

### A. Legal Standards

Pursuant to 28 U.S.C. § 2254(a), a person in custody pursuant to the judgment of a state court may apply to a federal district court for writ of habeas corpus "only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States."

Absent circumstances not relevant to Petitioner's case, a petitioner is required to exhaust available state court remedies before he seeks federal habeas review. 28 U.S.C.

---

[5] After the Law Court denied discretionary review, in response to a request from Petitioner for clarification, the Law Court noted it had considered "both counsel's memorandum and Hayden's memorandum in determining whether to issue a certificate of probable cause." (*Hayden*, No. Cum-17-70, Order (April 10, 2018).)

3

§ 2254(b), (c).[6] "Before seeking a federal writ of habeas corpus, a state prisoner must exhaust available state remedies, 28 U.S.C. § 2254(b)(1), thereby giving the State the 'opportunity to pass upon and correct' alleged violations of its prisoners' federal rights." *Baldwin v. Reese,* 541 U.S. 27, 29 (2004) (quoting *Duncan v. Henry,* 513 U.S. 364, 365 (1995) (per curiam)) (quotation marks omitted). In *Baldwin,* the Court noted that "[t]o provide the State with the necessary 'opportunity,' the prisoner must 'fairly present' his claim in each appropriate state court (including a state supreme court with powers of discretionary review), thereby alerting that court to the federal nature of the claim." *Id.* (quoting *Duncan,* 513 U.S. at 365–66).

---

[6] Title 28 U.S.C. § 2254(b) and (c) address exhaustion and state:

> **(b)(1)** An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that—
>
> **(A)** the applicant has exhausted the remedies available in the courts of the State; or
>
> **(B) (i)** there is an absence of available State corrective process; or
>
> **(ii)** circumstances exist that render such process ineffective to protect the rights of the applicant.
>
> **(2)** An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State.
>
> **(3)** A State shall not be deemed to have waived the exhaustion requirement or be estopped from reliance upon the requirement unless the State, through counsel, expressly waives the requirement.
>
> **(c)** An applicant shall not be deemed to have exhausted the remedies available in the courts of the State, within the meaning of this section, if he has the right under the law of the State to raise, by any available procedure, the question presented.

To exhaust a claim fully in state court in Maine, a petitioner must request discretionary review by the Law Court. *See* 15 M.R.S. § 2131. The Supreme Court has held that a procedural default bars federal review absent a demonstration of cause for the default and prejudice to the petitioner:

> In all cases in which a state prisoner has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice.

*Coleman v. Thompson*, 501 U.S. 722, 750 (1991).[7]

In *Martinez v. Ryan*, 566 U.S. 1 (2012), the Supreme Court recognized a "narrow exception" to its holding in *Coleman*, based on equity, not constitutional law: "Inadequate assistance of counsel at initial-review collateral proceedings may establish cause for a prisoner's procedural default of a claim of ineffective assistance at trial." 566 U.S. at 9, 16. However, when the procedural default relates to post-conviction counsel's actions at the discretionary-review stage rather than at the initial-review stage of the collateral proceedings, habeas relief is not available:

> The holding in this case does not concern attorney errors in other kinds of proceedings, including appeals from initial-review collateral proceedings, second or successive collateral proceedings, and petitions for discretionary review in a State's appellate courts. It does not extend to attorney errors in any proceeding beyond the first occasion the State allows a prisoner to raise a claim of ineffective assistance at trial . . . .

---

[7] Procedural default is a judicial doctrine "related to the statutory requirement that a habeas petitioner must exhaust any available state-court remedies before bringing a federal petition." *Lovins v. Parker,* 712 F.3d 283, 294 (6th Cir. 2013) (citing 28 U.S.C. § 2254(b), (c)).

5

*Martinez,* 566 U.S. at 16 (citations omitted).

As to federal habeas claims that were adjudicated on the merits in state court, the federal court may not grant relief unless (1) the state court decision was contrary to, or an unreasonable application of, federal law, as determined by the Supreme Court, pursuant to 28 U.S.C. § 2254(d)(1); or (2) the decision was based on an unreasonable determination of the facts, pursuant to section 2254(d)(2).[8]

As to review of a state court decision under section 2254(d)(1), "[i]t is settled that a federal habeas court may overturn a state court's application of federal law only if it is so erroneous that 'there is no possibility fairminded jurists could disagree that the state court's decision conflicts with this Court's precedents.'" *Nevada v. Jackson,* 569 U.S. 505, 508-09 (2013) (per curiam) (quoting *Harrington v. Richter,* 562 U.S. 86, 102 (2011)). "A state court must be granted a deference and latitude that are not in operation when the case involves review under the [*Strickland v. Washington*, 466 U.S. 668 (1984)] standard itself." *Harrington*, 562 U.S. at 101. Claims of ineffective assistance of counsel are thus subject to a "'doubly deferential'" standard of review, in deference to both the state court and defense counsel. *Woods v. Etherton,* --- U.S. ---, ---, 136 S. Ct. 1149, 1151

---

[8] Title 28 U.S.C. § 2254(d) provides:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim−
>
> (1)   resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2)   resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

(2016) (per curiam) (quoting *Cullen v. Pinholster*, 563 U.S. 170, 190 (2011)). State court determinations of fact "shall be presumed to be correct," and "[t]he applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1).[9]

In *Strickland*, the Supreme Court set forth the relevant Sixth Amendment standard by which claims of ineffective assistance based on counsel's errors are evaluated on the merits; *Strickland* requires a petitioner to demonstrate that "counsel's representation fell below an objective standard of reasonableness," and that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 688, 694. A court need not "address both components of the inquiry if the defendant makes an insufficient showing on one." *Id.* at 697. A court presumes "that counsel has 'rendered adequate assistance and made all

---

[9] The decision under review in this case is the Law Court's order denying a certificate of probable cause, because the Law Court's decision is the final state court adjudication on the merits. *See Greene v. Fisher*, --- U.S. ---, ---, 132 S. Ct. 38, 45 (2011) (noting that the last state-court adjudication on the merits of the petitioner's constitutional claim occurred on direct appeal to the state's supreme court); *Clements v. Clark*, 592 F.3d 45, 52 (1st Cir. 2010) ("A matter is 'adjudicated on the merits' if there is a 'decision finally resolving the parties' claims, with res judicata effect, that is based on the substance of the claim advanced, rather than on a procedural, or other, ground.'") (quoting *Teti v. Bender*, 507 F.3d 50, 56-57 (1st Cir. 2007)).

However, because the Law Court's order did not explain the Court's reasoning for denying a certificate of probable cause, the federal court may consider the trial court's decision:

> We hold that the federal court should "look through" the unexplained decision to the last related state-court decision that does provide a relevant rationale. It should then presume that the unexplained decision adopted the same reasoning.

*Wilson v. Sellers*, 138 S. Ct. 1188, 1192 (2018) (noting the state may rebut the presumption).

significant decisions in the exercise of reasonable professional judgment.'" *Companonio v. O'Brien*, 672 F.3d 101, 110 (1st Cir. 2012) (quoting *Strickland*, 466 U.S. at 690).

A court considers "the totality of the evidence," and "a verdict or conclusion only weakly supported by the record is more likely to have been affected by errors than one with overwhelming record support." *Strickland*, 466 U.S. at 695-96. "[T]he ultimate focus of inquiry must be on the fundamental fairness of the proceeding whose result is being challenged." *Id.* at 696.

### B. Grounds Asserted and Analysis[10]

#### a. *Batson* Challenge

Petitioner asserts the state court violated his right to a fair trial by an impartial jury of his peers when his defense counsel struck the only prospective juror of color. "[A] defendant in a criminal case can raise the third-party equal protection claims of jurors excluded by the prosecution because of their race." *Powers v. Ohio*, 499 U.S. 400, 415 (1991); *see also Batson v. Kentucky*, 476 U.S. 79 (1986). Petitioner's *Batson* challenge fails because the juror was challenged by defense counsel, not the prosecution, based on a language barrier and because Petitioner did not like the "vibe."[11] general feeling about the

---

[10] Petitioner asserts some of the same claims in different sections of his petition to this Court and his petitions to the state court. Petitioner also presents some identical or overlapping issues as separate grounds. For example, Ground 1 in the Petition asserts a *Batson* claim presented to the lower state court, and Ground 2 asserts that the Law Court improperly affirmed the lower state court's denial of Ground 1. The separately numbered grounds actually represent a single claim because federal courts review the final decision of the state courts as a whole, only looking to prior state court decisions for the reasoning underlying unexplained decisions. *See supra*, n. 9. The issues in this recommended decision are discussed based on the substantive claims rather than as individually numbered in Petitioner's filings.

[11] At the postconviction hearing, trial counsel testified that Petitioner asked counsel to strike the juror because he did not like the "vibe." (Postconviction Tr. at 86.) The postconviction court found as a fact that

8

juror. *Batson* and its progeny are based on prosecution peremptory challenges, not defense challenges, and courts generally uphold strikes based on language barriers unless the prosecution's reasons appear to be pretextual. *See e.g.*, *Sergros Caracas de Liberty Mut., S.A. v. Goldman, Sachs & Co.*, 502 F. Supp. 2d 183, 191 – 92 (D. Mass. 2007). The record lacks any evidence to suggest that the State's reasons for any involvement it might have had in the challenge were pretextual. The state court's denial of Petitioner's claim, therefore, was not contrary to or an unreasonable application of *Batson* and its progeny.[12]

### b. Right to be Present

Petitioner claims the state court improperly conducted certain conferences outside his presence and questioned potential jurors outside his ability to hear the proceedings. "[D]ue process clearly requires that a defendant be allowed to be present 'to the extent that a fair and just hearing would be thwarted by his absence,'" but absence is permissible "'when [the defendant's] presence would be useless, or the benefit but a shadow.'" *Kentucky v. Stincer*, 482 U.S. 730, 745 (1987) (quoting *Snyder v. Massachusetts*, 291 U.S. 97, 105 – 06 (1934)). Defendants have the right to be present during jury empanelment, *Gomez v. United States*, 490 U.S. 858, 873 (1989), but that right does not require

---

"Petitioner asked trial counsel to strike the only individual of color in the jury pool." (Postconviction Decision at 8.)

[12] To the extent Petitioner contends his counsel were ineffective because they challenged the juror, based on the record evidence, Petitioner's claim fails to establish that counsel's performance under the circumstances was substandard or that Petitioner was prejudiced as contemplated by *Strickland*.

9

defendants' participation in "every interaction" between a judge, jurors, or counsel. *United States v. Gagnon*, 470 U.S. 522, 526 (1985).

The state court determined that the Constitution did not require Petitioner's presence during chambers conferences or participation during side bar voir dire exchanges. (Postconviction Decision at 13). That determination was consistent with federal courts' interpretation of Supreme Court precedent. *See United States v. Ramirez-Rivera*, 800 F.3d 1, 40 (1st Cir. 2015); Fed. R. Crim. P. 43(b)(3) (defendant need not be present when "[t]he proceeding involves only a conference or hearing on a question of law"); *United States v. Reyes*, 764 F.3d 1184, 1196 (9th Cir. 2014) (defendant's participation not required at "side bar exchanges—where the attorneys argued that jurors should be excused for cause, exercised peremptory challenges, and discussed whether to proceed in the absence of some prospective jurors"); *United States v. Johnson*, 677 F.3d 138, 141 – 42 (3d Cir. 2012) ("the decision to have a criminal defendant present—and in close proximity to individual jurors—during individual voir dire conducted at sidebar is tactical and does not require the defendant's express consent"). Accordingly, the state court's rejection of Petitioner's claim was not contrary to or an unreasonable application of federal law as determined by the Supreme Court.

    c. **Ineffective Assistance of Counsel**

        i. **Declining to Impeach Petitioner's Son**

Petitioner asserts trial counsel were deficient because they failed to prevent Petitioner's son from testifying and failed to impeach his son's identification testimony. Trial counsel attempted to exclude the testimony, but the trial judge overruled their

10

objections. The state court determined that trial counsel were not deficient for failing to challenge the young child's testimony given the risk of alienating the jury, the other evidence that Petitioner was the perpetrator, and the tension between such a strategy and the intoxication manslaughter defense. (Postconviction Decision at 11 – 12.) Given that counsel attempted to exclude the testimony and given the legitimate strategic reasons not to challenge a young child's testimony, the state court's decision was not contrary to or an unreasonable application of *Strickland* and its progeny.

### ii. Weapons Focus Effect Expert Testimony

Petitioner claims trial counsel were ineffective because they did not present the testimony of a forensic psychologist concerning the "weapons focus effect" to discredit the testimony of Petitioner's son. The term refers to psychological research suggesting the presence of a weapon can impair an eyewitness's ability to accurately identify a perpetrator's face. *See e.g.,* Kassin et al., *On the "general acceptance" of eyewitness testimony research: A new survey of the experts*, American Psychologist 56 (5): 405 (2001). As explained above, counsel's decision not to challenge the identification testimony of Petitioner's son constitutes a reasonable strategic judgment. The state court's rejection of Petitioner's claim, therefore, was not contrary to or an unreasonable application of *Strickland* and its progeny.

### iii. Forensic Toxicologist Expert Testimony

Petitioner contends that his counsel's performance during trial, at sentencing, and on appeal was substandard because counsel did not present a forensic toxicologist to testify about the timing of his ingestion of drugs and the effect of the drugs on him at the time of

the shootings that resulted in the murder charges. The state court found no flaw with counsel's performance because other experts addressed Petitioner's drug use and because the expert's testimony would have been of little or no utility given Petitioner's decision not to testify about precisely when and what quantities of drugs he ingested on the day of the shootings. (Postconviction Decision at 12 – 13.) Petitioner did not offer a persuasive explanation to establish that the expert's testimony would have produced a different result at trial or sentencing. The state court's decision thus was not contrary to or an unreasonable application of *Strickland* and its progeny.

### iv. Private Investigator

Petitioner maintains that trial counsel should have hired a private investigator. The state court found that trial counsel hired a private investigator and that Petitioner never explained the evidence he contends the investigator should have found that might have changed the result at trial. (Postconviction Decision at 13.) The state court's reasoning is sound and, therefore, the court's finding was not an unreasonable determination of the facts and its decision was not contrary to or an unreasonable application of *Strickland* and its progeny.

### v. Jury Polling

Petitioner argues trial counsel were ineffective when they declined to poll the jury after the verdict. Without evidence "that the verdict was anything less than unanimous," counsels' decision to forego jury polling does not "f[a]ll outside the range of competence expected of attorneys in criminal cases." *United States v. Gerardi*, 586 F.2d 896, 899 (1st

Cir. 1978) (internal quotations omitted). The state court's rejection of Petitioner's claim was not contrary to or an unreasonable application of *Strickland* and its progeny.

### vi. Declining to Object

Petitioner asserts that trial counsel were ineffective when they "backed off" or declined to object at a number of points during the trial. While Petitioner cited certain instances to support his contention, Petitioner has not demonstrated that any of the alleged decisions by counsel amount to substandard practice. For example, Petitioner's argument that counsel should have objected to certain leading questions posed by the prosecutor is unavailing. As the state court noted, the questions were not for the State's benefit; rather, they arose as a result of an agreement with defense counsel to prevent unintended prejudice to Petitioner. (Postconviction Decision at 13, 15 – 16.) Petitioner also maintains that trial counsel failed to prevent the State from playing the relevant 911 recording at trial. Trial counsel objected to that evidence, but the Court overruled the objection on the merits. Petitioner also asserts that trial counsel should have disputed the qualifications of some of the State's witnesses, but trial counsel are entitled to deference concerning that decision as it could have generated negative reactions from the jury if the approach were unsuccessful. Petitioner has also failed to demonstrate the such an approach would have been successful. The state court's decision, therefore, was not contrary to or an unreasonable application of *Strickland* and its progeny.

### vii. Fight or Flight Expert Testimony

Petitioner claims trial counsel's performance was substandard because they declined to retain an expert psychologist to testify concerning the fight or flight syndrome

13

and its purported impact on one of the victims, Renee Sandora. Petitioner claims that a fight or flight response would have compelled Ms. Sandora to use the name of the intimate partner if that partner were the actual attacker, rather than refer to him as "you" or "my boyfriend" as she did in the 911 recording. Petitioner provided no persuasive record evidence to support his argument. The state court's decision was not contrary to or an unreasonable application of *Strickland* and its progeny.

### viii. James Hutchinson Testimony

Petitioner contends that trial counsel were ineffective because they declined to call James Hutchinson to testify that he saw a brown minivan drive by shortly after the shootings in order to cast doubt on other testimony about the dark sedan. After the postconviction hearing, the state court reasonably credited trial counsel's testimony that they believed his testimony would have been more prejudicial than helpful as a result of other information that Mr. Hutchinson was prepared to recount. (Postconviction Decision at 14.) Petitioner's alternate vehicle theory also potentially conflicts with the intoxication manslaughter defense. The state court's decision was not contrary to or an unreasonable application of *Strickland* and its progeny.

### ix. Pretrial Discovery

Petitioner maintains that trial counsel did not use pretrial discovery to obtain certain law enforcement notes. During trial, the parties realized that one of the state police officers was referring to annotations he had placed on a report for his reference in preparation for testifying. (Trial Transcript at 258:16 – 260:24.) When defense counsel asked to see the notes, the trial judge called a sidebar conference. (*Id.*) At sidebar, the prosecutor mentioned

that defense counsel had not asked for the notes before that point. (*Id.*) The trial judge allowed defense counsel to examine the notes or annotations during a brief recess. (*Id.*)

If a "lawyer neither investigate[s]" nor makes "a reasonable decision not to investigate[ ] the State's case through discovery," it can amount to a "a complete lack of pretrial preparation," undermining "the reliability of the adversarial process." *Kimmelman v. Morrison*, 477 U.S. 365, 385 (1986). Petitioner does not allege a "total failure" to investigate or conduct pre-trial discovery that led to counsel failing to notice a significant constitutional issue, as occurred in *Kimmelman*. *Id.* at 386 – 87. Indeed, the record lacks any evidence to suggest that had counsel requested and obtained the notes before trial, the examination of the officer would have been different or that the examination would have generated a different result. Petitioner also references certain phone text information that was not discovered until after trial began, but Petitioner does not provide any more information about the significance of that information. Petition did not demonstrate that prior knowledge of either the annotations or phone text information could have produced a different result. The state court's denial of Petitioner's claim, therefore, was not contrary to or an unreasonable application of *Strickland* and its progeny.

### x. Testing for Gunshot Residue and DNA

Petitioner argues that trial counsel were ineffective because they did not arrange for further forensic testing. Petitioner notes that Detective Bolton's blood could have been on Petitioner's shorts, along with the blood of Petitioner and one of the victims, which, Petitioner apparently contends, would have generated questions about the state's theory. The record reflects that there was no unknown source of DNA on the shorts, and Petitioner

has not explained how it would have mattered if there were. The state court concluded that it did not matter if Detective Bolton's blood also ended up on Petitioner's shorts. (Postconviction Decision at 14.) Given the volume of evidence suggesting that Petitioner was the perpetrator, trial counsel's strategy to pursue a manslaughter defense rather than seek to rebut all of the other evidence, including the DNA evidence on Petitioner's shorts containing blood from one of the victims, was not unreasonable. The state court's decision, therefore, was not contrary to or an unreasonable application of *Strickland* and its progeny.

### xi. Inconsistent Testimony

Petitioner claims that trial counsel elicited testimony that was inconsistent with his defense and, therefore, their performance was substandard. Petitioner cited an exchange between trial counsel and Detective Bolton, wherein Detective Bolton said he fell and cut his thumb while pursing Petitioner before the arrest. Petitioner argues the testimony would allow the jury to infer that any unknown DNA on his shorts was Detective Bolton's, rather than an unknown source. The state court concluded the testimony was not inconsistent with the defense theory of the case. (Postconviction Decision at 15.) Given that Petitioner has not established that the testimony would not have been presented regardless of counsel's questioning and given that the testimony is not inconsistent with the defense strategy, the state court's decision was not contrary to or an unreasonable application of *Strickland* and its progeny.

### xii. Same Attorneys on Appeal

Petitioner contends that his trial counsel had a conflict of interest in their representation of him on direct appeal, because they could not reasonably be expected to

16

raise their own errors at trial. Although no Supreme Court case requires separate attorneys at trial and appeal, *Martinez* and its progeny recognize the difficulty in presenting ineffective assistance of trial counsel claims when the same attorneys represent a defendant on direct appeal. Petitioner suffered no prejudice as a result of the same counsel at trial and on appeal, however, because under Maine law, he had a full opportunity to present his ineffective assistance of trial counsel claims to the state court on postconviction review with the assistance of different counsel. *See State v. Bellavance*, 2013 ME 42, 65 A.3d 1235, 1240 ("As a general rule, '[w]e do not consider claims of ineffective assistance of counsel on direct appeal; such claims will only be considered after a certificate of probable cause has been issued following a hearing on a post-conviction petition'") (quoting *State v. Ali*, 2011 ME 122, ¶ 20, 32 A.3d 1019). None of Petitioner's claims was barred for failing to raise it on direct appeal. The state court's denial of relief thus was not contrary to or an unreasonable application of *Strickland* and its progeny.

### xiii. Cumulative Errors

Petitioner argues that the claimed errors collectively, if not individually, warrant postconviction relief. The state court concluded the claims did not collectively amount to any violation. Particularly given that Petitioner's claimed errors fail as discussed herein, the state court's denial was not contrary to or an unreasonable application of *Strickland* and its progeny.

### d. Ineffective Assistance of Postconviction Counsel

Petitioner asserts that postconviction counsel made numerous errors. Petitioner has not established that his postconviction counsel's performance was substandard, and even

he had, Petitioner cannot seek relief based on the conduct of postconviction counsel because "[t]here is no constitutional right to an attorney in state post-conviction proceedings." *Coleman*, 501 U.S. at 752. "Inadequate assistance of counsel at initial-review collateral proceedings may establish cause for a prisoner's procedural default of a claim of ineffective assistance at trial," *Martinez*, 566 U.S. at 9, but none of Petitioner's ineffective assistance of trial counsel claims was procedurally defaulted. Petitioner's ineffective assistance claims were considered and rejected on the merits by the state court, and the state court decisions were not contrary to or unreasonable applications of federal law.

### e. Challenge to the Maine Postconviction Review Statute

Petitioner contends that Maine's postconviction statute, 15 M.R.S. §§ 2121 – 2132, as applied to him, violated due process and deprived him of federal habeas review because the statute allegedly does not require the Maine courts to adjudicate all federal claims and allegedly does not require postconviction counsel to advocate zealously on their clients' claims. Because Petitioner did not assert this claim during the state court postconviction proceedings, Petitioner did not exhaust the available state remedies, and, therefore, the claim is barred.

Even if the claim were properly exhausted, it lacks merit. If a petitioner presents his or her claims to each available state court, federal habeas review is available even when state courts do not reach the merits of claims. *See e.g., Kirwan v. Spencer*, 631 F.3d 582, 586 (1st Cir. 2011) (If a claim was presented but "has not been adjudicated on the merits in state court, [federal habeas courts] review that claim de novo"). For petitioners in Maine

18

and other states who incorporate ineffective assistance of trial counsel claims into postconviction hearings rather than direct appeals, federal habeas review remains available for those procedurally defaulted claims if the reason for the default was ineffective assistance of postconviction counsel. *See Martinez*, 566 U.S. at 9, 16. In other words, the Maine postconviction statute does not preclude (and did not preclude Petitioner in this case) a petitioner from seeking review in state court or federal court postconviction proceedings. Accordingly, Petitioner has not established a constitutional violation resulting from the application of Maine's postconviction statute in this case.

### III. CONCLUSION

Based on the foregoing analysis, an evidentiary hearing is not warranted under Rule 8 of the Rules Governing Section 2254 Cases. I recommend the Court deny Petitioner's request for habeas relief under 28 U.S.C. § 2254, and that the Court deny a certificate of appealability pursuant to Rule 11 of the Rules Governing Section 2254 Cases because there is no substantial showing of the denial of a constitutional right within the meaning of 28 U.S.C. § 2253(c)(2).

### NOTICE

A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which de novo review by the district court is sought, together with a supporting memorandum, within fourteen (14) days of being served with a copy thereof. A responsive memorandum shall be filed within fourteen (14) days after the filing of the objection. Failure to file a timely objection shall constitute a waiver of the right to de novo review by the district court and to appeal the district court's order.

Dated this 24th day of July, 2019.

/s/ John C. Nivison
U.S. Magistrate Judge