UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| JOEL A. HAYDEN             )<br>                                             )<br>            Petitioner,           )<br>                                             )<br>   v.                                       )   1:18-cv-00432-JAW<br>                                             )<br>WARDEN, MAINE STATE PRISON )<br>                                             )<br>            Respondent.         ) | |

**ORDER AFFIRMING THE RECOMMENDED DECISION OF THE
MAGISTRATE JUDGE**

A Petitioner seeking habeas relief under 28 U.S.C. § 2254 from his state court conviction objects to the Magistrate Judge's recommendation that the Court deny his petition. After conducting a de novo review, the Court affirms the Magistrate Judge for the reasons set forth in his opinion and further explained in this opinion.

**I.    PROCEDURAL BACKGROUND**

On October 10, 2018, Joel Hayden filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. *Pet. Under 28 U.S.C. § 2254 for Writ of Habeas Corpus by a Person in State Custody* (ECF No. 1) (*Pet.*). Mr. Hayden filed an addendum to his petition on October 15, 2018. *Pet'r's Addendum Supplementing the Pet. for a Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2254* (ECF No. 7). The Magistrate Judge ordered the Attorney General for the state of Maine to answer Mr. Hayden's petition on October 23, 2018. *Order to Answer* (ECF No. 6). The Attorney General for the state of Maine, on behalf of the Warden, Maine State Prison, filed an answer on December 18, 2018, and the state court record on December 21, 2018. *Resp.'s Answer*

to Pet. for Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2254 (ECF No. 8); *State Ct. Record* (ECF No. 9). Mr. Hayden filed a reply on February 20, 2019. *Pet'r's Reply to Resp.'s Answer to Pet. for Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2254* (ECF No. 14).

The Magistrate Judge entered his report and recommended decision on July 24, 2019. *Report and Recommended Decision on 28 U.S.C. § 2254 Pet.* (ECF No. 21) (*Rec. Dec.*). On August 2, 2019, Mr. Hayden filed his first motion for an extension of time to file his objection to the Magistrate Judge's recommended decision. *Mot. to Extend Time Objs.* (ECF No. 22). On August 8, 2019, the Magistrate Judge granted this extension. *Order Granting Mot. to Extend Time* (ECF No. 23). On August 18, 2019, Mr. Hayden sent a letter to the Clerk of Court for the District of Maine requesting a second brief extension. *Letter/Mot.* (ECF No. 24). On August 22, 2019, the Magistrate Judge granted this second extension. *Order Granting Mot. to Extend Time* (ECF No. 25). On August 21, 2019, Mr. Hayden filed a motion to correct his objections, which had not yet been received by the Court. *Letter/Mot. to Correct Objs.* (ECF No. 26). On August 31, 2019, Mr. Hayden sent a letter to the Clerk of Court stating that he had sent a copy of his objections to the Court on August 21, 2019, and asking for an acknowledgement of receipt. *Letter to Clerk of Ct.* (ECF No. 27). On September 12, 2019, the Magistrate Judge granted Mr. Hayden a third extension to file his objections. *Order* (ECF No. 28).

Mr. Hayden filed two copies of what he termed Part A to his objections to the recommended decision on September 26, 2019. *Obj. to Report and Recommended*

*Decision* & Attach. 3 (ECF No. 29). On October 11, 2019, the Magistrate Judge granted Mr. Hayden's August 21, 2019, motion to amend. *Order Granting Mot. to Amend* (ECF No. 30). On October 17, 2019, Mr. Hayden filed a motion to correct his objections on the ground that he had misquoted a portion of the trial transcript. *Letter/Mot. to Correct and Clarify* (ECF No. 31). On October 31, 2019, the Court issued an order reserving ruling on the motion to correct the objections because it did not have the jury selection transcript necessary to determine which of the quotations was accurate, informing Mr. Hayden that he had filed two copies of the same portion of his objections, and ordering the filing of a jury selection transcript. *Order on Letter/Mot. to Correct and Clarify* (ECF No. 32). The Court granted Mr. Hayden until November 28, 2019, to file a complete copy of his objections. *Id.* That same day, the Attorney General for the state of Maine submitted the jury selection transcript ordered by the Court. *Resp.'s Resp. to the Court's 10/31/19 Order on Mot. for Misc. Relief* (ECF No. 33).

On November 26, 2019, the Court granted Mr. Hayden's motion to correct his objections and mistakenly struck as moot the portion of its previous order which gave Mr. Hayden until November 28, 2019, to file his complete objections. *Order Granting Mot. to Correct and Clarify Obj.* (ECF No. 34). On November 29, 2019, Mr. Hayden filed a motion requesting that the Court alter its order to allow him to file a complete copy of his objections. *Letter/Mot. to Alter Order (ECF No. 32)* (ECF No. 35). On December 6, 2019, the day it received Mr. Hayden's motion, the Court corrected its mistake and granted Mr. Hayden an additional ten days to file a complete copy of his

objections—eight days more than the two days that the Court had previously subtracted from Mr. Hayden's time to file. *Order on Letter/Mot. to Alter Order (ECF No. 32)* (ECF No. 36).

On December 13, 2019, Mr. Hayden filed an additional copy of what he now termed Part One (as opposed to Part A) of his objections. *Pet'r's Objs. to Magistrate's Decision on 28 U.S.C. § 2254 Pet.* (ECF No. 37). On December 26, 2019, the Court informed to Mr. Hayden that it had still not received a copy of Part Two of Mr. Hayden's objections, despite his statement that he mailed it at the same time as Part One. *Order* (ECF No. 38). The Court granted Mr. Hayden an additional week to file Part Two. *Id.*

On January 1, 2020, Mr. Hayden filed a motion for an extension. *Letter/Mot. to Extend Time* (ECF No. 39). The Court granted the extension on January 7, 2020, and gave Mr. Hayden until January 27, 2020, to place Part Two of his objections in the mail. *Order Granting Mot. to Extend Time* (ECF No. 40). The Court informed Mr. Hayden that no further extensions would enter. *Id.* On January 6, 2020, Mr. Hayden filed the first part of Part Two of his objections. *Pet'r's Objs. to Magistrate's Decision on 28 U.S.C. § 2254 Pet.* (ECF No. 41). On January 27, 2020, the Court informed Mr. Hayden that it had not yet received the second part of Part Two of his objections and that the Court expected him to comply with the January 27, 2020, deadline. *Order* (ECF No. 43).

On January 26, 2020, Mr. Hayden sent a second copy of what he termed Section A of Part Two of his objections. *Pet'r's Objs. to Magistrate's Decision on 28 U.S.C. §*

*2254 Pet.* (ECF No. 44). On February 4, 2020, the Court noted that it had still not received Section B of Part Two of Mr. Hayden's objections but stated that—as it wrote on January 7, 2020—no further objections would enter and the Court would consider Section B if it received the section before issuing an order. *Order* (ECF No. 45). On April 23, 2020, Mr. Hayden filed Section B of Part Two of his objections.[1] *Pet'r's Objs. to Magistrate's Decision on 28 U.S.C. § 2254 Pet.* (ECF No. 47).

## II. DISCUSSION

Mr. Hayden's objections focus on two areas: an expansion of his arguments based on *Batson v. Kentucky*, 476 U.S. 79 (1986), and assertions that the jury pool and certain of the jurors at his trial were tainted with bias against people of color. The two arguments are intertwined in Mr. Hayden's objections. After conducting a de novo review, the Court largely agrees with the conclusions of the Magistrate Judge and addresses only those arguments in Mr. Hayden's objections whose resolution the Court believes would add to the record.

### A. Joel Hayden's *Batson* Objection

Mr. Hayden frames his *Batson* objection as a "*Batson* claim against defense counsel." *Objs.* at 2. Such a claim fails for several reasons.

#### 1. The Three-Step *Batson* Analysis

To be effective, a *Batson* challenge requires a three-step process:

---

[1] Although it is not crystal clear which documents Mr. Hayden intended to constitute his operative objections, the Court deemed the most recent version of each section to be operative. For Part One, this is ECF No. 47. For Part Two Section A, this is ECF No. 44. (Page 30 is missing from ECF No. 44. The most recent copy of page 30 is located at ECF No. 41.) For Part Two Section B, this is ECF No. 47, Attach. 2. Collectively, these documents constitute Mr. Hayden's objections, which the Court cites as *Objs*.

> First, a defendant must make a prima facie showing that a peremptory challenge has been exercised on the basis of race; second, if that showing has been made, the prosecution must offer a race-neutral basis for striking the juror in question; and third, in light of the parties' submissions, the trial court must determine whether the defendant has shown purposeful discrimination.

*Davis v. Ayala*, 576 U.S. 257, 270 (2015) (quoting Snyder v. Louisiana, 552 U.S. 472, 476-477 (2008) (internal quotation marks and alterations omitted)); *Sanchez v. Rodin*, 808 F.3d 85, 89-90 (1st Cir. 2015). Here, there is nothing in the record confirming that Mr. Hayden brought his current contention that he believed his counsel had made improper use of preemptory challenges on the basis of race to the attention of the trial judge or his own counsel. *McDaniel v. McCall*, C/A No. 1:09-1348-MBS, 2010 U.S. Dist. LEXIS 101922, at *31 (D.S.C. Sept. 24, 2010) ("Petitioner did not inform his counsel or the court that he believed counsel was improperly utilizing his peremptory challenges"). To the contrary, in open court and in the presence of Mr. Hayden, defense counsel in this case confirmed that the jury was acceptable to the defense as seated. *Jury Selection Tr.* at 185:15-19.

### 2. Whether Joel Hayden May Bring a *Batson* Claim Against His Own Counsel

Mr. Hayden contends that, contrary to the Magistrate Judge's conclusion, a *Batson* claim may be brought against defense counsel. *Objs.* at 3 (citing *Georgia v. McCollum*, 505 U.S. 42 (1992)). Mr. Hayden is correct that Supreme Court and First Circuit precedent supports *Batson* challenges against peremptory strikes exercised by defense counsel. *See United States v. Girouard*, 521 F.3d 110, 112 n.2 (1st Cir. 2008) (acknowledging that *McCollum* "held that *Batson* governed peremptory strikes

6

by a criminal defendant"). However, Mr. Hayden is incorrect to assert that the cited precedent supports his bringing a *Batson* challenge based on the peremptory strikes made by his own counsel. *McCollum* stands for the proposition that the prosecution may challenge a criminal defendant's use of peremptory challenges for discriminatory purposes. 505 U.S. at 59. Mr. Hayden did not cite any cases in which a defendant successfully asserted a *Batson* claim based on his or her own counsel's exercise of peremptory strikes.

In its research, the Court found a split of circuit authority as to whether defendants may bring *Batson* claims against their own lawyers. In *United States v. Huey*, 76 F.3d 638 (5th Cir. 1996), the Fifth Circuit concluded that a defendant had standing to raise an equal protection claim on behalf of an excluded juror. *Id.* at 640. By contrast, in *United States v. Boyd*, 86 F.3d 719 (7th Cir. 1996), the Seventh Circuit concluded that "*McCollum*, which holds that defense lawyers are bound by the rule of *Batson*, did not reach this conclusion in order to protect defendants from their lawyers." *Id.* at 722. In *Boyd*, however, the Seventh Circuit acknowledged that a defendant may later bring a *Batson* claim against his own counsel based on ineffective assistance of counsel. *Id.* ("[T]he exercise of a peremptory challenge by the defense, in violation of *Batson* and *McCollum*, does not entitle the defendant to a new trial <u>unless the challenge amounts to ineffective assistance of counsel</u>") (emphasis supplied).

As the Seventh Circuit later explained, the line between *Huey* and *Boyd* is whether a new trial may be granted without showing ineffective assistance of counsel,

7

with the Fifth Circuit in *Huey* holding the view that a proven *Batson* violation requires reversal and the Seventh Circuit in *Boyd* taking the position that a successful *Batson* violation requires a demonstration of ineffective assistance of counsel. *Winston v. Boatwright*, 649 F.3d 618 (7th Cir. 2011). However, in *Winston*, the Seventh Circuit concluded that "a *Batson* violation is a structural error." *Richardson v. Lemke*, 745 F.3d 258, 265, n.2 (7th Cir. 2014) (citing *Winston*, 745 F.3d at 628-29). Some circuits have concluded that where defense counsel has committed a *Batson* error, it constitutes a structural error entitled to a presumption of prejudice; others are of the view that the defendant must demonstrate a reasonable probability that the result would have been different. *Compare United States v. Kehoe*, 712 F.3d 1251, 1254 (8th Cir. 2013) and *Young v. Bowersox*, 161 F.3d 1159, 1161 (8th Cir. 1998); *with Winston*, 649 F.3d at 632-34. This Court has not found any First Circuit authority that clarifies the rule in this Circuit.

For purposes of this analysis, therefore, the Court assumes the rule more favorable to Mr. Hayden, namely that Mr. Hayden may raise his own counsel's *Batson* violation as structural error under a *Strickland* standard, which, if proven, could result in a presumption of prejudice. The Court turns to whether he has demonstrated that his trial counsel committed a *Batson* violation and, as will be seen, the Court concludes he has not.

### 3. Juror Number 3 Was Struck for Cause

For a defendant to meet his or her burden on a *Batson* challenge, he or she "must show that the challenge [to a potential juror] was peremptory rather than for

8

cause . . ..." *United States v. Bergodere*, 40 F.3d 512, 515-16 (1st Cir. 1994). In his objections, Mr. Hayden does not allege that his counsel exercised a peremptory strike to remove Juror Number 3—the potential juror about whose exclusion Mr. Hayden makes his challenge—from consideration and in fact acknowledges that the strike was for cause. *See Objs.* at 12 ("When it came time to exclude jurors for cause, the following colloquial between the State, defense and the Court").

A review of the jury selection transcript confirms that Juror Number 3 was struck for cause. After the trial judge finished questioning a batch of jurors, the judge stated, "All right, challenges for cause from the State." *Jury Selection Tr.* at 169:11-12. After the prosecutor finished making challenges for cause, counsel for Mr. Hayden began making challenges for cause. In the context of making such challenges for cause, counsel for Mr. Hayden stated, "My last one, Judge, for the same reason, although maybe not quite as bad, would be Juror Number 3 on the language issue. That was the last juror that we had." *Id.* at 172:14-17. The prosecutor then agreed with counsel for Mr. Hayden, and the trial judge finished the exchange by saying, "All right, it's by agreement. I'll exclude 3." *Id.* at 22-25. There is no indication from this portion of the transcript that a peremptory strike was used by either the prosecutor or the defense to exclude Juror Number 3. Mr. Hayden's *Batson* claim fails for this reason alone.

### 4. The Trial Judge Was Not Obligated to Raise *Batson* Sua Sponte

Mr. Hayden argues—even though neither his own counsel nor the prosecutor made a *Batson* objection—the trial judge should have further questioned his counsel

9

and other prospective jurors. *See Objs.* at 7-8 ("independent of what a party might do—in fact, especially when the suspect challenge comes from the attorneys for the defendant—the court has a duty to engage in the full *Batson* analysis . . . or 'become a party to the biased act'" (quoting *Edmonson v. Leesville Concrete Co.*, 500 U.S. 614, 624 (1991)) (citing *McCollum*, 505 U.S. at 59; *Powers v. Ohio*, 499 U.S. 400, 412 (1991); *Lemley v. State*, 599 So.2d 64, 70 (Ala. Crim. App. 1992))). First, the cases Mr. Hayden cites do not provide support for his thesis. The portion of *Edmonson* Mr. Hayden quotes does not refer to any obligation of the trial judge, but to a civil defendant's ability to bring a *Batson* claim. *Edmonson*, 500 U.S. at 623-27. The portion of *McCollum* Mr. Hayden cites simply states the holding of that case: that a prosecutor may initiate a *Batson* challenge based on the use of a peremptory strike by a criminal defendant. *McCollum*, 505 U.S. at 59. Similarly, the portion of *Powers* Mr. Hayden cites does not suggest that a judge has a sua sponte obligation to conduct a *Batson* inquiry. *Powers*, 499 U.S. at 412. The cited portion of *Lemley*—an intermediate appellate decision from a state court other than Maine—stands only for the proposition that a judge is not barred from such a sua sponte inquiry. *Lemley*, 599 So.2d at 70.

Second, a trial judge is not obligated to raise a *Batson* challenge sua sponte. *See United States v. Bowles*, 751 F.3d 35, 38 (1st Cir. 2014) (suggesting that "district court's sua sponte initiation of a *Batson* enquiry into counsel's motivations was in error" where "[p]rior to th[e] colloquy, there was nothing in the record apart from the strike to indicate that defense counsel's peremptory strike was motivated by race");

10

*see also United States v. Snyder*, 658 F. App'x 859, 861 (9th Cir. 2016) (where defense counsel "did not notify the district court that she sought to have the court question the prosecutor regarding" certain peremptory strikes, there is no error "plain or otherwise, in the district court's failure to conduct a *sua sponte Batson* analysis of the exclusion"); *Hidalgo v. Fagen, Inc.*, 206 F.3d 1013, 1019-20 (10th Cir. 2000) (reviewing for plain error because the claim was not raised below, panel found that trial court's failure to raise *Batson* claim sua sponte was not plain error); *Clark v. Newport News Shipbuilding and Dry Dock Co.*, 937 F.2d 934, 939 (4th Cir. 1991) ("Neither *Batson* nor its progeny suggests that it is the duty of the court to act *sua sponte* to prevent discriminatory exclusion of jurors"). Here, where there was no exercise of a peremptory strike, neither the defense counsel nor the prosecutor objected to the juror's exclusion, and both the prosecutor and the defense counsel offered the same race-neutral explanation for the strike for cause, the trial judge did not err by accepting the joint judgment of counsel for the defense and the prosecution and declining to conduct a *Batson* inquiry that neither party had sought and the situation did not warrant.

Third, Mr. Hayden's argument about the trial judge's obligation seems to be based on the mistaken premise that his Sixth and Fourteenth Amendment rights to an impartial jury and a fair trial required that there be a juror of color on his jury. *Objs.* at 7 ("Juror # (3) was the only juror whose presence on the jury would guarantee that [Mr.] Hayden had a peer seated on his jury" (citing *Mu'Min v. Virginia*, 500 U.S. 415 (1991))). But the Constitution only requires an impartial jury; a criminal

11

defendant who is a person of color is not entitled to have one or more of his or her jurors also be people of color. *See Holland v. Illinois*, 493 U.S. 474, 480 (1990) ("The Sixth Amendment requirement of a fair cross section on the venire is a means of assuring, not a *representative* jury (which the Constitution does not demand), but an *impartial* one (which it does)" (emphasis in original)).

### 5. The Record Does Not Suggest that the Reason Given by Defense Counsel and the Prosecution for Striking Juror Number 3 for Cause was Pretextual

Mr. Hayden asserts that the language barrier justification for Juror Number 3's exclusion is pretextual because it was based on an answer he gave to a question on the jury questionnaire that was the same as 96% of other potential jurors. *Objs.* at 11-14. But it is not at all clear from the jury selection transcript that this is the case. *See Jury Selection Tr.* at 172:14-25. Neither defense counsel nor the prosecution stated that the reason they believed Juror Number 3 should be excluded was because of his answer to the question Mr. Hayden mentions.

It is difficult for the Court to assess from a written transcript many of the factors that would go into determining that Juror Number 3 suffered from a language barrier, such as his demeanor and facial expressions, the length of time he paused before answering questions, and his speed and fluency of speaking. In fact, this difficulty is the reason why trial judge determinations are given so much deference when it comes to *Batson*. *See Snyder v. Louisiana*, 552 U.S. 472, 477 (2008) (explaining why trial court determinations related to credibility and demeanor are entitled to deference); *see also United States v. Casey*, 825 F.3d 1, 11 (1st Cir. 2016)

("We are mindful that only the trial court observed first-hand 'the demeanor of the attorney who exercise[d] the challenge, along with whether [each stricken panelist's] demeanor can credibly be said to have exhibited the basis for the strike'" (quoting *United States v. Mensah*, 737 F.3d 789, 796 (1st Cir. 2013)) (alterations in *Casey*)). All these factors, as well as others, could have contributed to the joint agreement by defense counsel and the prosecution that Juror Number 3 should be excluded.[2]

### B. Joel Hayden's Assertions of Jury Bias

Mr. Hayden did not bring his claims of jury bias before the Magistrate Judge and so the Court considers them waived. *See Paterson-Leith Co., Inc. v. Mass. Mun. Wholesale Elec. Co.*, 840 F.2d 985, 990 (1st Cir. 1988) ("A party has a duty to put its best foot forward before the magistrate: to spell out its argument squarely and distinctly"); *see also U.S. Bank Tr., N.A. v. Moore*, 2020 WL 1934961, at *3 (D. Me. Apr. 22, 2020) ("Parties must take before the magistrate, not only their 'best shot' but all of their shots" (quoting *Borden v. Sec'y of Health and Human Servs.*, 836 F.2d 4, 6 (1st Cir. 1987) (per curiam))). However, even if this were not the case, Mr. Hayden's arguments fail.

#### 1. There Is No Evidence Juror Number 1, Juror Number 95, or Juror Number 188 Infected the Jury Pool with Racial Bias

Mr. Hayden asserts that Juror Number 1 was racially biased, that his bias may have tainted the other potential jurors, that the trial judge failed to conduct a voir

---

[2] Because the Court is not convinced that Juror Number 3 was excluded based on his jury questionnaire answer, the Court rejects Mr. Hayden's arguments about other potential jurors who gave the same or similar answers to that question. *See Objs.* at 13-18.

dire to establish whether Juror Number 1 had tainted the jury pool, and therefore, for Mr. Hayden's trial "to comport with due process and equal protection" it was "essential to seat" Juror Number 3 on Mr. Hayden's jury. *Objs.* at 3-6. However, leaving aside whether Juror Number 1's answers at his voir dire indicate racial bias, Mr. Hayden offers no evidence for his assertion that Juror Number 1 tainted the jury pool. The trial judge asked Juror Number 1 not to discuss his voir dire with the other potential jurors, *Jury Selection Tr.* at 103:06-08, and Juror Number 1 was not ultimately included in the jury.

Mr. Hayden asserts that Juror Number 95 was racially biased because he believed that too many people who stand trial in criminal cases are found not guilty and that his bias infected the jury pool. *Objs.* at 28, 30, 33. However—once again leaving aside whether Juror Number 95's answers at voir dire indicate racial bias— as with Juror Number 1, Mr. Hayden does not present any evidence that Juror Number 95 tainted the jury pool, the trial judge asked him not to discuss his voir dire with the other potential jurors, *Jury Selection Tr.* at 115:17-20, and he was ultimately struck for cause. *Id.* at 137:09-21.

Mr. Hayden also asserts that Juror 188, who had heard about Mr. Hayden's case and did not feel he could be impartial to Mr. Hayden, likely spoke to other potential jurors about his case and that the trial judge did not go far enough to find out if this was true. *Objs.* at 25-27, 37-50. However, Mr. Hayden once again offers no evidence to indicate that Juror Number 188 spoke about Mr. Hayden's case with

14

any of the other potential jurors.  Additionally, Juror Number 188 had the following exchange with the trial judge:

> THE COURT:  I appreciate you telling us that, sir.  And I would appreciate it if you didn't discuss any of this with your fellow jurors.
> JUROR:  Absolutely not, ma'am.
> THE COURT:  Have you talked to any of them about—
> JUROR:  Absolutely not.
> THE COURT:  —the fact that you are local?
> JUROR:  No.  That is a feeling that I have.
> THE COURT:  Okay.
> JUROR:  It is between me—me and you folks and the Good Lord.
> THE COURT:  Okay.  All right.  Thank you, sir.
> JUROR:  Thank you.

*Jury Selection Tr.* at 97:04-17.  In this exchange, Juror Number 188 confirms he did not speak with other members of the jury about his knowledge and feelings regarding Mr. Hayden's case, stating in the present tense that what he spoke about with the trial judge was between him, the trial judge and counsel, and God.

### 2. There Is No Indication Juror Number 13 or Juror Number 81 Were Biased

Mr. Hayden objects to the fact that Juror Number 13 had been a victim of an armed robbery by a person of color and that she stated she could not be impartial if Maine had a death penalty, which it does not.  *See Objs.* at 14, 50-54.  However, there is no indication in the record that Juror Number 13 harbored any bias against people of color based on the robbery she suffered, and her answer at voir dire about the death penalty suggests that any bias she may have had if Maine did have a death penalty would have been in favor of Mr. Hayden.  *See Jury Selection Tr.* at 162:17-165:15.[3]

---

[3]  Mr. Hayden makes similar allegations about the bias of other jurors who were crime victims, offering similarly thin proof.  *See Objs.* at 28-29.  The Court rejects these arguments.

Mr. Hayden objects to Juror Number 81, arguing that he gave inconsistent answers regarding his connection to law enforcement, indicating that he was biased against Mr. Hayden. *See Objs.* at 15-16. However, the record reflects that Juror Number 81 did not provide inconsistent answers. Rather, in response to one question, he stated that his grandfather had been a law enforcement officer in Blue Hill, Maine, *Jury Selection Tr.* at 17:09-23, and in response to a different question, he stated that there was no one he was related to or friends with who is employed by the Maine Attorney General's Office or by any district attorney's office in the state of Maine. *Id.* at 19:16-20:09.

### 3. The Trial Court Was Not Obligated to Conduct Further Voir Dire of Prospective Jurors

Mr. Hayden argues that with several potential jurors, the trial judge was obligated to ask follow-up questions to ensure that the potential jurors had not "infect[ed] the jury pool" with racial bias. *Objs.* at 5; *see also id.* at 24, 27. Mr. Hayden has presented no evidence beyond the speculative to support his view that any potential juror discussed racial bias with other members of the jury pool, and from the Court's review of the record, the trial judge was assiduous in requesting that jurors who were individually questioned not discuss their voir dire with the other potential jurors.

In addition, trial courts are given "ample discretion" to conduct voir dire questioning as the trial judge deems adequate. *Mu'Min*, 500 U.S. at 423 (citing *Rosales-Lopez v. United States*, 451 U.S. 182, 189 (1981)). A trial court "retains discretion as to the form and number of questions on the subject [of racial bias],

including the decision whether to question the venire individually or collectively." *Turner v. Murray*, 476 U.S. 28, 37 (1986). "[A] defendant cannot complain of a judge's failure to question the venire on racial prejudice unless the defendant has specifically requested such an inquiry." *Id.* Where a line of questioning regarding race, racial bias, or prejudice has not been requested by counsel or the defendant, as is the case here, a trial court is not "required to ask potential jurors about the issue of racial bias" unless there are "substantial indications of the likelihood of racial or ethnic prejudice." *United States v. Escobar-de Jesus*, 187 F.3d 148, 166 (1st Cir. 1999) (quoting *Rosales*-Lopez, 451 U.S. at 190).

The First Circuit does not require further individual questioning of every juror if voir dire of one juror raises concerns of potential bias. *United States v. Casanova*, 886 F.3d 55, 61 (1st Cir. 2018) ("We reject the proposition that upon discovering that a prospective juror was not forthcoming during group voir dire, a district court is required to conduct an individualized inquiry as to racial bias for every other juror in the pool"). Furthermore, the existence of bias among one prospective juror does not "render it any more likely that the remaining members of the jury pool harbor hidden prejudice." *Id.*

### III. CONCLUSION

The Court has reviewed and considered the Magistrate Judge's Recommended Decision, together with the entire record; the Court has made a de novo determination of all matters adjudicated by the Magistrate Judge's Recommended Decision; and the Court concurs with the recommendations of the United States

17

Magistrate Judge for the reasons set forth in his Recommended Decision and in this order, and determines that no further proceeding is necessary.

Accordingly, it is ORDERED that the Recommended Decision of the Magistrate Judge (ECF No. 21) be and hereby is AFFIRMED and the Court DENIES with prejudice Joel Hayden's Petition Under 28 U.S.C. § 2254 for Writ of Habeas Corpus by a Person in State Custody (ECF No. 1). The Court DENIES a certificate of appealability pursuant to Rule 11 of the Rules Governing Section 2254 Cases because the Petitioner has not made a substantial showing of the denial of a constitutional right within the meaning of 28 U.S.C. § 2253(c)(2).

SO ORDERED.

/s/ John A. Woodcock, Jr.
JOHN A. WOODCOCK, JR.
UNITED STATES DISTRICT JUDGE

Dated this 12th day of August, 2020